# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>Ebrahim Kalatehe (1), and<br>Mathew Chavol (2),<br><br>Defendant(s) | Case No.<br><br>19 MJ03775 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 8, 2019 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2 | Possession with intent to distribute a controlled substance (opium), and aiding and abetting |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Conan Chang, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/2019

ALICIA G. ROSENBERG
*Judge's signature*

City and state: Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Billy Joe McLain x6702

## AFFIDAVIT

I, Conan Chang, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrants against Mathew CHAVOL ("CHAVOL") and Ebrahim KALATEHE ("KALATEHE") for a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2: Possession with Intent to Distribute a Controlled Substance and Aiding and Abetting.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been so employed since March 2007. I am currently assigned to the Joint Terrorism Task Force Group ("JTTF") and am charged with investigating various immigration and customs offenses, including drug trafficking violations under Title 21 of the United States Code. I have

received 23 weeks of specialized training pertaining to, among other subjects, drug trafficking, money laundering, undercover operations and electronic and physical surveillance procedures. I have been involved in numerous investigations dealing with the possession, manufacture, distribution, and importation of controlled substances. Before becoming a SA with HSI, I was employed as an infantry officer in the United States Marine Corps attaining the rank of Major.

### III. SUMMARY OF PROBABLE CAUSE

4. On August 8, 2019, CHAVOL had arranged to sell UC-1 five kilograms of opium for $100,000. Before CHAVOL met with UC-1 for the drug deal, law enforcement saw CHAVOL enter an apartment complex on Gault Street in Reseda, California (the "Gault Street Complex"). Around this time, CHAVOL called UC-1 and told him that CHAVOL's supplier did not want CHAVOL to bring the entire five kilograms of opium at once, so CHAVOL would bring a portion of the opium to a predetermined location and CHAVOL's supplier would bring the remainder of the opium after UC-1 showed CHAVOL the money. Law enforcement then saw CHAVOL leave the Gault Street Complex with a weighted bag that CHAVOL placed in his BMW before driving off. Detectives stopped CHAVOL and found approximately two kilograms of suspected opium in his BMW and 77 grams of opium in CHAVOL's pocket.

5. After detectives stopped CHAVOL, KALATEHE, who lives in an apartment in the Gault Street Complex ("KALATEHE's Apartment"), left the Gault Street Complex and drove in his Honda toward the same general location where CHAVOL was stopped.

Detectives stopped KALATEHE, and found approximately three kilograms of suspected opium in KALATEHE's Honda.

6. Later that evening, law enforcement executed a state search warrant at KALATEHE's Apartment and found pay-owe sheets, scales, about one kilogram of a substance containing heroin, and about 7.8 kilograms of suspected opium.

## IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, video recordings, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. Investigation into CHAVOL's Drug Trafficking.

8. On January 17, 2019, at approximately 3:00 p.m., a Drug Enforcement Administration ("DEA") SA acting in an undercover capacity ("UC-1"), walked to the entrance of Star Motors Collision Center ("Star Motors") located at 7100 Reseda Boulevard, Reseda, California and met with CHAVOL. UC-1 and CHAVOL got into UC-1's vehicle, which was parked in front of Star Motors, where CHAVOL sold the UC what the DEA laboratory later determined was approximately 9.6 grams of opium for $300 dollars.

9. Following this opium purchase, UC-1 introduced an HSI undercover agent ("UC-2") over the phone to CHAVOL as an associate who would conduct additional drug deals with CHAVOL.

10. On February 21, 2019, at approximately 3:00 p.m., UC-2 met with CHAVOL in UC-2's vehicle, again outside of Star Motors. During the meeting, CHAVOL told UC-2 that he could provide

kilograms of high-end opium for approximately $27,000 to $30,000 per kilogram. CHAVOL further stated that the price per kilogram could be lowered if UC-2 purchased multiple kilograms at a time. In addition to the discussion relating to opium, CHAVOL also stated that he had a Mexican source that could provide methamphetamine, cocaine, and heroin. CHAVOL informed UC-2 that he would reach out to his Mexican source and obtain the prices for those drugs.

11. On February 22, 2019, at approximately 3:00 p.m., UC-2 returned to Star Motors and met with CHAVOL inside UC-2's vehicle. Once inside the vehicle, CHAVOL sold UC-2 what the DEA laboratory later determined was 249 grams of opium for $6,000.

12. On July 26, 2019, UC-1 contacted CHAVOL and said he had a friend that wanted to purchase opium. CHAVOL confirmed that he still had opium for sale. CHAVOL and UC-1 then negotiated the purchase of five kilograms of opium from CHAVOL on August 8, 2019 for $100,000.

B. **Law Enforcement finds Kilograms of Opium on CHAVOL and KALATEHE on August 8, 2019.**

13. On August 8, 2019, UC-1 agreed to meet with CHAVOL to purchase five kilograms of opium. Burbank Police Department ("BPD") detectives along with HSI, and DEA SAs maintained surveillance of CHAVOL and UC-1.

14. At approximately 2:00 p.m., Detective Gunn saw CHAVOL exit Star Motors talking to someone on the phone. Around this time, CHAVOL called UC-1 to inform him that he was on his way to pick up opium from his supplier.

15. At approximately 2:32 p.m., CHAVOL got into a BMW sedan bearing California license plate 7LXC254 and left Star Motors. BPD Narcotics units, including Detectives Gunn, Benavidez, Mirakyan, and Sgt. Kendrick, followed CHAVOL to Gault Street where he parked near the Gault Street Complex and entered the complex.

16. At approximately 3:00 p.m., CHAVOL called UC-1 and stated that his supplier did not want CHAVOL to bring the entire five kilograms of opium at once, so CHAVOL would bring a portion of the opium to a predetermined location and CHAVOL's supplier would bring the remainder of the opium after UC-1 showed CHAVOL the money.

17. At approximately 3:20 p.m., CHAVOL left the Gault Street Complex. Detectives Gunn and Benavidez saw him holding a weighted Trader Joe's reusable bag. Prior to entering the Gault Street Complex, CHAVOL had no items in his hands. CHAVOL placed the Trader Joe's bag in the backseat of the BMW, got into the driver's seat, and drove away.

18. BPD detectives stopped CHAVOL in his BMW. In the BMW, detectives found two single-kilogram bags of suspected opium in a Trader Joe's reusable bag.[1]

19. At approximately 3:33 p.m., Detective Dugas saw KALATEHE exiting the Gault Street Complex and leaving in a Honda CR-V sport utility vehicle that was registered to him. According to California Department of Motor Vehicles records,

---

[1] These bags have been submitted to the LACSD laboratory, but the results have not yet returned.

KALATEHE's residence is KALATEHE's Apartment in the Gault Street Complex.

20. Detectives Dugas, Mirakyan, and Sgt. Barcus followed KALATEHE as KALATEHE headed towards CHAVOL's location at a high rate of speed. Detective Virzi attempted to stop KALATEHE in his car equipped with red and blue police lights, but KALATEHE did not yield to officers until KALATEHE's Honda collided with Detective Mirakyan's vehicle.

21. Detectives arrested KALATEHE, searched his Honda, and found three single-kilogram packages of suspected opium in the backseat. One of these three packages was tested by the LACSD laboratory, and the results indicate it was approximately 888.74 grams of a substance containing opium.[2]

C. **Search of KALATEHE's Apartment.**

22. At approximately 8:30 p.m., on August 8, 2019, law enforcement executed a state search warrant at KALATEHE's Apartment in the Gault Street Complex. Law enforcement found digital scales and pay-owe sheets, along with about 8.8 kilograms of suspected controlled substances located throughout KALATEHE's Apartment.

23. Numerous exhibits of suspected controlled substances that were seized from KALATEHE's Apartment have been submitted to the LACSD laboratory. To date, the laboratory has reported that approximately 2.3 kilograms of the substances seized contain opium, about one kilogram is a substance containing

---

[2] The two remaining single-kilogram bags have been submitted to the LACSD laboratory, but the results have not yet returned.

heroin, and about 57 grams (retrieved from the kitchen shelf) contain no controlled substances. About 5.5 kilograms of suspected opium seized from various locations in KALATEHE's Apartment have not yet been tested by the LACSD.

    **D.**    **KALATEHE's and CHAVOL's Statements.**

    24.  Following CHAVOL's arrest, Detectives Virzi and Dugas attempted to conduct an interview of CHAVOL. They advised CHAVOL of his Miranda rights and CHAVOL invoked his right to counsel. No further questions were asked regarding this case.

    25.  Detectives Virzi and Dugas conducted an interview of KALATEHE. They advised KALATEHE of his Miranda rights and KALATEHE made, among others, the following statements: he uses opium because it relieves his pain, he was not involved in the sale of opium, he was only transporting the opium to another location, and the opium did not belong to him.

## V. CONCLUSION

26. For all of the reasons described above, there is probable cause to believe that KALATEHE and CHAVOL each committed a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2: Possession with Intent to Distribute a Controlled Substance, and Aiding and Abetting.

/S/
_____
Conan Chang,
HSI Special Agent

Subscribed to and sworn before me this 10th day of September, 2019.

ALICIA G. ROSENBERG
_____
Honorable Alicia G. Rosenberg
UNITED STATES MAGISTRATE JUDGE